**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **RYAN VANDER PLUYM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | `12-cv-2322 EFM/JPO` |
| **v.** | ) | |
| | ) | |
| **TERRELL GIBSON & ASSOCIATES,** | ) | |
| **LLC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

NOW COMES the Plaintiff, RYAN VANDER PLUYM, by and through his attorneys, LARRY P. SMITH & ASSOCIATES, LTD., and for his complaint against the Defendant, TERRELL GIBSON & ASSOCIATES, LLC., Plaintiff states as follows:

### I.   PRELIMINARY STATEMENT

1.      This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq. and for Defendant's violation of the Kansas Consumer Protection Act, K.S.A. 50-623 et seq., (hereinafter, "KCPA").

### II.   JURISDICTION & VENUE

2.      Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3.      Jurisdiction arises under the KCPA pursuant to 28 U.S.C. §1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.   PARTIES

5.      RYAN VANDER PLUYM, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Pratt, County of Pratt, State of Kansas.

1

6.     The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to Taylor Feed (hereinafter "the debt").

7.     The debt that Plaintiff allegedly owed Taylor Feed was for a bill allegedly incurred by Plaintiff relative to his purchase of feed from Taylor Feed.

8.     The feed purchased by Plaintiff was used by Plaintiff for his personal horses.

9.     At no time was the feed purchased by Plaintiff used by Plaintiff for any commercial or business purpose.

10.     At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

11.     At all relevant times, Plaintiff was a "consumer" as that term is defined by K.S.A. §50-624(b).

12.     TERRELL GIBSON & ASSOCIATES, LLC., (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Kansas.   Defendant is registered as a limited liability company in the State of Texas.

13.     The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

14.     Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

15.     During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

2

16.    At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

17.    At all relevant times, Defendant acted as a "supplier" as that term is defined by K.S.A. §50-624(l).

18.    At all relevant times, the debt on which Defendant was attempting to collect was relative to a "consumer transaction" which Plaintiff had allegedly entered into as defined by K.S.A. §50-624(c).

19.    At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## IV.    ALLEGATIONS

## COUNT I: VIOLATION OF THE FDCPA

20.    Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

21.    In or around March 2012, Defendant initiated a telephone call to Plaintiff's place and employment and left a message for Plaintiff on the answering machine at his place of employment.

22.    In or around March 2012, subsequent to Defendant having left the aforesaid message, Plaintiff engaged in a telephone conversation with Defendant.

23.    Plaintiff then provided Defendant with his cellular telephone number.

24.    Plaintiff also specifically informed Defendant to no longer contact him at his place of employment.

25.     From in or around March 2012 through May 2012, and on multiple occasions therein, Defendant initiated telephone calls to Plaintiff's cellular telephone number in a further attempt to collect the debt.

26.     At the time Defendant initiated the aforesaid telephone calls to Plaintiff's cellular telephone number, Defendant's telephone number did not register on the caller identification on Plaintiff's cellular telephone.

27.     At the time Defendant initiated the aforesaid telephone calls to Plaintiff's cellular telephone number, Defendant masked the telephone number that appeared on the caller identification on Plaintiff's cellular telephone number so that Defendant's telephone number would not appear.

28.     At the Defendant initiated the aforesaid telephone calls to Plaintiff's cellular telephone number, Defendant used a program, software, system and/or device that caused a telephone number other than Defendant's telephone number to appear on Plaintiff's caller identification.

29.     Plaintiff was aware the aforesaid telephone calls were initiated by Defendant for when Plaintiff answered the aforesaid telephone calls a duly authorized representative of Defendant would then attempt to collect the debt from Plaintiff.

30.     At the Defendant initiated one of the aforesaid telephone calls to Plaintiff's cellular telephone number, Defendant used a program, software, system and/or device that caused a telephone number associated with a court in the State of Kansas to appear on the caller identification on Plaintiff's cellular telephone number.

31.     At the Defendant initiated one of the aforesaid telephone calls to Plaintiff's cellular telephone number, Defendant used a program, software, system and/or device that

caused Plaintiff's number at his place of employment to appear on the caller identification on Plaintiff's cellular telephone number.

32.     At the Defendant initiated one of the aforesaid telephone calls to Plaintiff's cellular telephone number, Defendant used a program, software, system and/or device that caused a telephone number with the same area code and the same first three (3) digits as Plaintiff's telephone number to appear on the caller identification on Plaintiff's cellular telephone number.

33.     Defendant's conduct in causing false telephone numbers to appear on Plaintiff's cellular telephone's caller identification, thus masking Defendant's identity, was a false, deceptive and/or misleading method used by Defendant to attempt to collect the debt.

34.     Defendant's conduct in causing false telephone numbers to appear on Plaintiff's cellular telephone's caller identification, thus masking Defendant's identity, was an unfair and/or unconscionable method used by Defendant to attempt to collect the debt.

35.     In or around March 2012, Plaintiff engaged in a telephone conversation with Defendant wherein Defendant told Plaintiff that the debt he owed was a commercial debt.

36.     Defendant then accused Plaintiff of using the feed he obtained from Taylor Feed for cattle at Plaintiff's present place of employment.

37.     At the time Defendant made the aforesaid accusation, Plaintiff was employed as a rodeo instructor at a college in the State of Kansas.

38.     During the course of the telephone call between Plaintiff and Defendant, Plaintiff informed Defendant that he did not use any feed he obtained from Taylor Feed for business purposes.

39.     Plaintiff further informed Defendant that he had only used the feed he obtained for his personal horses.

40.     Plaintiff further informed Defendant that the feed to which Defendant was referring was purchased by Plaintiff when he lived in the State of Texas.

41.     Plaintiff told Defendant that when he moved to the State of Kansas Plaintiff did not bring any of the feed with him that he had purchased from Taylor Feed.

42.     Despite Plaintiff having informed Defendant of the aforesaid information, Defendant continued to tell Plaintiff that the debt was a commercial debt.

43.     Defendant's duly authorized representative then told Plaintiff that he was "boarding a plane in Dallas, Texas so that he could fly to Kansas to investigate whether the feed Plaintiff purchased was being used at Plaintiff's job."

44.     Defendant's representation that the debt was a commercial debt was false, deceptive and/or misleading given that the debt was incurred primarily for Plaintiff's personal use and/or for Plaintiff's household expenditure.

45.     Defendant's representation that the debt was a commercial debt was false, deceptive and/or misleading given that the debt was a personal debt.

46.     Defendant's representation that the debt was a commercial debt misrepresented the character, nature and/or legal status of the debt given that the debt was incurred primarily for Plaintiff's personal use and/or for Plaintiff's household expenditure.

47.     Defendant's representation that the debt was a commercial debt misrepresented the character, nature and/or legal status of the debt given that the debt was a personal debt.

48.     Upon information and belief, Defendant falsely represented to Plaintiff that the debt was a commercial debt so that Defendant's conduct in attempting to collect the debt from Plaintiff would not be regulated under the FDCPA.

49.     Defendant's representation to Plaintiff that the debt was a commercial debt had the effect of conveying to an unsophisticated consumer that Defendant was not regulated under the FDCPA with respect to its attempts to collect the debt from Plaintiff.

50.     Defendant's conduct in falsely representing that its conduct was not regulated under the FDCPA was unfair and/or unconscionable given that Defendant was attempting to collect a personal debt from Plaintiff and thus its conduct is regulated under the FDCPA.

51.     At the time Defendant's duly authorized representative threatened to go to Kansas to investigate whether Plaintiff was using the feed at his place of employment, Defendant's duly authorized representative was not in the process of boarding a plane in Dallas, Texas that was flying to the State of Kansas.

52.     At the time Defendant made the aforesaid threat to travel to Kansas, Defendant had no intent to do so.

53.     Defendant's threat that he would travel to Kansas was false, deceptive and/or misleading given that at the time Defendant made the threat it had no intent to travel to Kansas.

54.     Defendant's statement that he would fly to Kansas to investigate whether the feed Plaintiff purchased was being used for commercial purposes was made by Defendant to Plaintiff in an attempt to coerce Plaintiff into making a payment to Defendant.

55.     To date, Defendant has not traveled to Kansas to carry out an investigation as threatened by Defendant.

56.     Despite Plaintiff having advised Defendant not to contact him at his place of employment, in or around March through in or around April 2012, Defendant initiated multiple telephone calls to Plaintiff at his place of employment in a further attempt to collect the debt.

57.     Despite Defendant having an alternative telephone number at which it could contact Plaintiff other than the telephone number at his place of employment, in or around March through in or around April 2012, Defendant initiated multiple telephone calls to Plaintiff at his place of employment in a further attempt to collect the debt.

58.     Despite Plaintiff having communicated with Defendant and despite Defendant having contact information for Plaintiff , in or around March through in or around April 2012, Defendant initiated telephone calls to multiple third-parties in a further attempt to collect the debt.

59.     During the course of the aforesaid time period, Defendant engaged in telephone conversations with multiple co-workers of Plaintiff.

60.     Defendant's duly authorized representatives referred to themselves as "Investigators" when speaking to Plaintiff's co-workers.

61.     During the course of the aforesaid time period, Defendant told Plaintiff's co-workers that it wanted to set up meetings with them to discuss Plaintiff's financial circumstances with them.

62.     Defendant also told Plaintiff's co-workers that wanted to set up meeting with them in Kansas to discuss and investigate whether Plaintiff was using any feed he obtained from Taylor Feed for business purposes.

63.     During the course of the aforesaid time period, Defendant communicated with co-workers of Plaintiff that included his colleagues; supervisors and the present of the college where Plaintiff was employed.

64.     Plaintiff's co-workers informed Plaintiff of the contents of their telephone conversations with Defendant.

65.     Plaintiff did not consent to Defendant communicating with third-parties.

66.     Defendant's representations that its duly authorized representatives were "Investigators" were false, deceptive and/or misleading given that they were acting as debt collectors attempting to collect the debt from Plaintiff.

67.     As a result of Defendant's multiple communications to various co-workers of Plaintiff, as delineated above, during the course of the aforesaid time period, Plaintiff was required to set up a meeting with the President of the college and the college's attorney to discuss the telephone calls that Defendant had initiated to Plaintiff's co-workers.

68.     During the meeting between Plaintiff and the aforesaid individuals, Plaintiff had to explain that Defendant was calling in relation to a debt Plaintiff allegedly owed.

69.     During the course of the aforesaid time period, as a result of Defendant's multiple communications to Plaintiff's co-workers, Plaintiff also had to explain to his co-workers that Defendant was contacting them to try to collect a debt he allegedly owed.

70.     Plaintiff was embarrassed, upset, humiliated and experienced mental anguish as a result of  having to explain to his co-workers that Defendant was contacting them to try to collect a debt he allegedly owed.

71.     On or about March 15, 2012, Defendant sent a correspondence to Plaintiff in a further attempt to collect the debt. (See a true and exact copy of said correspondence attached hereto as **Exhibit A**).

72.     In the correspondence, dated March 15, 2012, Defendant did not inform Plaintiff that it was a debt collector, attempting to collet a debt and that any information obtained would be used for that purpose.

73.     In the correspondence, dated March 15, 2012, Defendant stated "[t]his is your last opportunity to take care of a pressing legal matter between yourself and Taylor Feed. I need copies of 2 checks faxed or emailed over immediately. If not I need you to let me know the best place for a PI to come out and serve you at."

74.     Defendant's representations to Plaintiff, as delineated in the paragraph above, had the effect of conveying to an unsophisticated consumer that if Plaintiff did not make a payment to Defendant then Defendant would file a lawsuit against Plaintiff and have Plaintiff served with the lawsuit.

75.     Defendant has not filed a lawsuit against Plaintiff for the debt he allegedly owes.

76.     Upon information and belief, at the time of making the aforementioned threat, Defendant had no intention of filing a lawsuit against Plaintiff for the debt he allegedly owes.

77.     Upon information and belief, Defendant has no authority to file a lawsuit against Plaintiff for the debt he allegedly owes.

78.     Upon information and belief, at the time of making the aforementioned threat, Defendant had no authority to file a lawsuit against Plaintiff for the debt he allegedly owes.

79.     In or around April 2012, due to Defendant's conduct, as delineated above, Plaintiff was coerced by Defendant to provide Defendant with his debit card information.

80.     In April 2012, on multiple occasions, Defendant attempted to withdraw funds from Plaintiff's debit account.

81.     Defendant attempted to withdraw funds from Plaintiff's debit account on seven (7) separate occasions on April 2, 2012.

82.     Defendant further attempted to withdraw funds from Plaintiff's debit account on the following dates:

      a.       April 3, 2012;

      b.       April 4, 2012; and,

      c.       May 2, 2012.

83.     Defendant was unable to successfully withdraw funds from Plaintiff's debit account during the aforesaid dates.

84.     Subsequent to Defendant having attempted to withdraw funds from Plaintiff's debit account, Defendant initiated a telephone call to Plaintiff wherein Defendant accused Plaintiff of giving Defendant a false debit card number.

85.     The debit card number Plaintiff provided to Defendant was not false.

86.     Defendant's conduct in accusing Plaintiff of having provided Defendant with false account information was a statement made by Defendant to harass and/or abuse Plaintiff.

87.     On or about April 4, 2012, Plaintiff sent Defendant a correspondence. (See a true and exact copy of said correspondence attached hereto as **Exhibit B**).

88.     On April 4, 2012, Defendant received the correspondence sent by Plaintiff that was dated April 4, 2012.

89.    In the correspondence Plaintiff sent to Defendant, dated April 4, 2012, Plaintiff stated "I am requesting that your company and those hired by your firm or those you represent not to contact me or my employer or my coworkers."

90.    Despite Defendant having received written correspondence from Plaintiff, dated April 4, 2012, requesting that Defendant cease contacting him with respect to the debt, Defendant continued to contact Plaintiff, on multiple occasions, in a further attempt to collect the debt.

91.    In April 2012 through May 2012, Defendant initiated additional telephone calls to Plaintiff in a further attempt to collect the debt.

92.    On or about April 17, 2012, Plaintiff's counsel sent a correspondence to Defendant. (See a true and exact copy of said correspondence attached hereto as **Exhibit C**).

93.    Defendant received the correspondence, dated April 17, 2012.

94.    In the correspondence, dated April 17, 2012, Plaintiff's counsel informed Defendant that it represented Plaintiff with respect to the debt on which Defendant was attempting to collect.

95.    In the correspondence, dated April 17, 2012, Plaintiff's counsel provided Defendant with its contact information and its name.

96.    In the correspondence, dated April 17, 2012, Plaintiff's counsel informed Defendant to cease and desist communicating with Plaintiff with respect to any debts Defendant was attempting to collect from Plaintiff.

97.    On or about May 1, 2012, Plaintiff's counsel sent a second correspondence to Defendant. (See a true and exact copy of said correspondence attached hereto as **Exhibit D**).

98.    Defendant received the correspondence, dated May 1, 2012.

99.     In the correspondence, dated May 1, 2012, Plaintiff's counsel, again, informed Defendant that it represented Plaintiff with respect to the debt on which Defendant was attempting to collect.

100.    In the correspondence, dated May 1, 2012, Plaintiff's counsel, again, provided Defendant with its contact information and its name.

101.    On or prior to May 1, 2012, Defendant had received at least one correspondence from Plaintiff's counsel informing Defendant that Plaintiff was represented with respect to the debt.

102.    On or about May 1, 2012, Defendant initiated a telephone call to Plaintiff's counsel.

103.    Defendant then engaged in a telephone conversation with Plaintiff's counsel.

104.    On or prior to May 1, 2012, Defendant was cognizant that Plaintiff was represented by counsel with respect to the debt.

105.    On or prior to May 1, 2012, Defendant had communicated with Plaintiff's counsel.

106.    On or prior to May 1, 2012, Defendant was cognizant of Plaintiff's counsel's contact information.

107.    At no time has Plaintiff's counsel failed to respond to a communication from Defendant.

108.    At no time has Plaintiff's counsel provided Defendant with consent to communicate with Plaintiff.

109.     Despite Defendant being cognizant that Plaintiff was represented by an attorney, and despite Defendant having communicated with Plaintiff's attorney, Defendant continued to initiate telephone calls to Plaintiff in a further attempt to collect the debt.

110.     Despite Defendant having been informed, on multiple occasions, to cease communicating with Plaintiff, and despite Defendant having received multiple written correspondence stating the same, Defendant continued to initiate telephone calls to Plaintiff in a further attempt to collect the debt.

111.     On or about May 15, 2012, Defendant initiated a telephone call to Plaintiff in a further attempt to collect the debt.

112.     Defendant then engaged in a telephone conversation with Plaintiff wherein Defendant informed Plaintiff it had provided Plaintiff with more than enough time to pay the debt.

113.     Plaintiff informed Defendant that he was represented by an attorney.

114.     Defendant then told Plaintiff "your attorney dropped your case."

115.     Defendant then told Plaintiff it was going to give him one more chance before taking him to the Erath County courthouse.

116.     Erath County, in the State of Texas, is the county where Taylor Feed is located.

117.     Defendant's representation that it would give Plaintiff one more chance before taking him to the Erath County courthouse had the effect of conveying to an unsophisticated consumer that if Plaintiff did not pay the debt then a lawsuit would be filed against him.

118.     At no time prior to Defendant making the aforesaid statement about Plaintiff's counsel no longer representing Plaintiff did Plaintiff's counsel inform Defendant that it was not representing Plaintiff.

14

119.    Defendant's representation to Plaintiff that his attorney dropped his case, as delineated above, was false, deceptive and/or misleading given that at the time Defendant made the representation Plaintiff's counsel was still representing Plaintiff.

120.    Defendant's representation to Plaintiff that his attorney dropped his case was a statement made by Defendant to abuse and/or harass Plaintiff and to cause tension between Plaintiff and his counsel.

121.    Defendant's representations to Plaintiff that his attorney dropped his case caused Plaintiff to believe that his counsel was no longer representing him with respect to the debt.

122.    Due to Defendant's conduct, subsequent to Defendant having made the aforesaid representation Plaintiff that his attorney had dropped his case, Plaintiff contacted his counsel.

123.    As a result of Defendant's representations, Plaintiff contacted his counsel to ascertain if his counsel was still representing him with respect to the debt.

124.    As a result of Defendant's representations, Plaintiff's counsel had to reassure Plaintiff that he was still being represented and that Defendant was making false statements to Plaintiff.

125.    On or about May 15, 2012, within an hour of Defendant having initiated the aforesaid telephone call to Plaintiff, Defendant initiated another telephone call to Plaintiff in a further attempt to collect the debt.

126.    Defendant then told Plaintiff that it had to conduct an asset liability report on Plaintiff.

127.    Defendant further told Plaintiff that it would be coming to Plaintiff's home within the next forty (40) minutes to investigate Plaintiff.

128.    Defendant's representations to Plaintiff that it would be coming to his home to conduct an asset liability report were false, deceptive and/or misleading given that Defendant never went to Plaintiff's home.

129.    Defendant's representations to Plaintiff that it would be coming to his home to conduct an asset liability report were statements made by Defendant to Plaintiff in an attempt to coerce Plaintiff into making a payment to Defendant.

130.    Defendant's representations to Plaintiff that it would be coming to his home to conduct an asset liability report were statements made by Defendant to Plaintiff in an attempt to abuse or harass Plaintiff.

131.    In its attempts to collect the debt allegedly owed by Plaintiff to Taylor Feed, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

    a.    Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and failed to identify himself, failed to state that he is confirming or correcting location information concerning the consumer, and/or identified his employer without the express request of the consumer in violation of 15 U.S.C. §1692b(1);

    b.    Communicated with the consumer after the debt collector knew the consumer was represented by an attorney with regards to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address and said attorney did not fail to respond within a reasonable period of time to communications from the debt collector, in violation of 15 U.S.C. §1692b(6);

    c.    Communicated with the consumer at an unusual time and place or at a time or place which should be known to be inconvenient to the consumer in violation of 15 U.S.C. § 1692c(a)(1);

    d.    Communicated with the consumer despite knowing that the consumer was represented by an attorney with respect to the debt allegedly owed by Plaintiff and said attorney had not consented for Defendant to have direct communication with Plaintiff in violation of 15 U.S.C. §1692c(a)(2);

    e.    Communicated in connection with the collection of any debt with any person other than the consumer, his attorney, a consumer reporting agency if

otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector in violation of 15 U.S.C. §1692c(b);

f.  Continued to communicate with the consumer in an effort to collect on the alleged debt despite the fact that the consumer notified the debt collector in writing that the consumer refused to pay the debt or that the consumer wished that the debt collector to cease further communication with the consumer in violation of 15 U.S.C. §1692c(c);

g.  Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

h.  Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

i.  Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

j.  Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

k.  Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

l.  Failed to disclose in communications that said communication was from a debt collector and that any information obtained during the communication will be used for the purpose of collecting a debt in violation of 15 U.S.C. §1692e(11);

m.  Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f;

n.  Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

132.    As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

WHEREFORE, Plaintiff, RYAN VANDER PLUYM, by and through his attorneys, respectfully prays for judgment as follows:

a.      All actual compensatory damages suffered;

    b.      Statutory damages of $1,000.00;

    c.      Plaintiff's attorneys' fees and costs;

    d.      Any other relief deemed appropriate by this Honorable Court.

## COUNT III: VIOLATION OF THE KCPA

133.    Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

134.    Notice of this action has been provided to the Kansas Attorney General pursuant to K.S.A. §50-634(g).

135.    In its attempts to collect the debt allegedly owed by Plaintiff, Defendant violated the KCPA, K.S.A. 50-623 et seq., in one or more of the following ways:

    a.      Engaging in any deceptive act or practice in connection with a consumer transaction in violation of K.S.A. §50-626(a);

    b.      Willfully using, in any oral or written representation, an exaggeration, falsehood, innuendo or ambiguity as to a material fact in violation of K.S.A. §50-626(b)(2);

    c.      Willfully failing to state a material fact, or the willful concealment, suppression or omission of a material fact, in violation of K.S.A. §50-626(b)(3);

    d.      Engaging in any unconscionable act or practice in connection with a consumer transaction in violation of K.S.A. §50-627(a);  and,

    e.      Otherwise failing to comply with the provisions of the KCPA.

136.    As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

WHEREFORE, Plaintiff, RYAN VANDER PLUYM, by and through his attorneys, respectfully prays for judgment as follows:

    a.      All actual compensatory damages suffered;

b.      Statutory damages of $10,000.00 per Defendant's violation of the KCPA;

c.      Plaintiff's attorneys' fees and costs;

d.      Any other relief deemed appropriate by this Honorable Court.

### V.      JURY DEMAND

137.    Plaintiff hereby demands a trial by jury on all issues so triable.

138.    The Plaintiff, RYAN VANDER PLUYM, by and through his attorneys, Larry P. Smith & Associates, Ltd., hereby respectfully requests that the trial of this matter proceed in Kansas City.

Respectfully submitted,
**RYAN VANDER PLUYM**


By:  ___s/ D. Matthew Durgin_____
Attorney for Plaintiff

Dated: May 18, 2012

D. Matthew Durgin (Atty. No.: 21557)
LARRY P. SMITH & ASSOCIATES, LTD.
8508 W. 90th Terrace
Overland Park, KS 66212
Telephone:   (913) 908-2313
(913) 871-4170
Facsimile:    (888) 418-1277
E-Mail:       mdurgin@smithlaw.us